# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEX BELFI,
    *Plaintiff*     :     CIVIL ACTION
            :
    **v.**         :
            :
USAA FEDERAL SAVINGS    :
BANK et al.,         :     No. 22-2083
    *Defendants*    :

## MEMORANDUM

PRATTER, J.               SEPTEMBER ___, 2022

    Alex Belfi asks the Court to grant quiet title on a property located in Philadelphia, PA. He also alleges violations of several federal and state statutes related to his mortgage on this property. Because Mr. Belfi fails to allege any plausible bases for his federal claims and the Court lacks subject matter jurisdiction over the other claims, the Court will dismiss Mr. Belfi's complaint against all defendants, in part with prejudice and in part without prejudice.

## BACKGROUND

## I.  Mr. Belfi's Complaint

    Mr. Belfi filed a 390-page complaint on May 25, 2022, and then a 397-page Amended Complaint on June 18, 2022. Doc. Nos. 1 and 8. Mr. Belfi seeks to quiet title on his property at 1502 E. Moyamensing Avenue Philadelphia, Pennsylvania ("the Property"). Am. Compl. at 63, Doc. No. 8.

    Mr. Belfi took out a Veteran Home Loan mortgage on the Property for $400,000 in June 2016 with USAA. Am. Compl. ¶ 1. Mr. Belfi's mortgage required monthly payments beginning in August 2016. Am. Compl. ¶ 4. In August 2018, USAA sent Mr. Belfi a foreclosure notice stating that "Failure to pay $4,621.54 by 10/05/2018 . . . may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property." *Id.* ¶ 15.

USAA then instituted a foreclosure action against Mr. Belfi in the Philadelphia Court of Common Pleas in January 2019. *Id.* at ¶ 18.

Mr. Belfi alleges that USAA used the Mortgage Electronic Registration System ("MERS") to record his mortgage without his permission. After his foreclosure notice, Mr. Belfi alleges that Omar Basped (who, according to Mr. Belfi is actually a fictitious person) executed a fraudulent mortgage assignment in November 2018 that "does not represent an accurate purchase and sale of [his] Note and Mortgage from the purported Lender." *Id.* ¶¶ 13, 76, 118, 120. He alleges that this action violated the Pennsylvania Uniform Electronic Transaction Act,[1] the Pennsylvania Uniform Real Property Electronic Recording Act,[2] the Pennsylvania Unfair Trade Practices and Consumer Protection Law,[3] and involved the torts of fraud in the inducement, fraudulent concealment, and breach of contract. He also alleges deceit by USAA's attorneys, although he does not name any as defendants. *Id.* ¶ 188. His primary "fraud" allegation seems to be that "he was not aware, before signing, that the [mortgage] contract contained a Mortgage Identification Number... By signing this document, [Mr.] Belfi unknowingly, by purposeful deceit, b[r]ought Merscorp Holding, Inc and the Mers® System into the contractual nexus." Am. Compl. ¶ 140.

For the federal claims, Mr. Belfi alleges that USAA violated the Fair Credit Report Act (FCRA) by causing a shorter length of credit history to appear in his credit reports (when his mortgage was assigned to a new lender), the Fair Debt Collection Practices Act by failing to send him an Act 6 notice of foreclosure before filing the 2019 Court of Common Pleas foreclosure action, and the Racketeer and Corrupt Organizations ("RICO") Act by defrauding the U.S. Government through use of mortgage-backed securities and "double-dipping" from the VA Loan

---

[1] 73 Pa. Cons. Stat. §§ 2260.101–2260.503.
[2] 21 P.S. Deeds and Mortgages § 351.
[3] 73 Pa. Stat. Ann. §2270.4(a).

Guaranty program. *Id.* at 49–61. He also mentions the Lanham Act based on MERSCORP Holding Inc.'s use of the "MERS" trademark. *Id.* ¶ 143.

In his lengthy complaint, Mr. Belfi attaches various MERS corporate and trademark filings, MERS records, two academic papers about electronic mortgage registration, and a transcript from a New Jersey state court case involving MERS.[4]

Mr. Belfi asks the Court to quiet title in his favor for the property. Mr. Belfi also seeks "actual damages, civil penalties, and attorney fees." Am. Compl. at 63. Additionally, he has filed a separate motion asking the Court to appoint counsel for him. Doc. No. 7.

## II.   Related Proceedings

This is not the first or only case on court dockets regarding Mr. Belfi's mortgage. The foreclosure action on the Property is currently pending in the Philadelphia Court of Common Pleas. *USAA Fed. Sav. Bank v. Belfi*, Case No. 190100496 (Pa. Ct. Comm. Pls.). The Court of Common Pleas deferred the foreclosure action pending Mr. Belfi's bankruptcy proceedings in February 2022. The court recently removed the case from deferred status on August 11, 2022 based on the completion of Mr. Belfi's bankruptcy proceedings. *USAA Fed. Sav. Bank v. Belfi*, Case No. 190100496 (Pa. Ct. Comm. Pls. Aug. 11, 2022).

Mr. Belfi also previously attempted to remove his foreclosure action to federal court. *USAA FSB v. Belfi*, No. 2:19-cv-03607 (E.D. Pa. 2019). The federal court remanded the case to state court in September 2020. *USAA Fed. Sav. Bank v. Belfi*, No. 19-cv-3607, 2020 WL 5763585 (E.D. Pa. Sept. 28, 2020).[5]

---

[4] The Court notes that these extensive attachments are not appropriate materials for submission with a federal pleading.

[5] Additionally, Mr. Belfi has improperly filed at least two other cases alleging conspiracies involving alleged fraudulent signatures in federal court. The court dismissed one for lack of jurisdiction, *Belfi v. Raidus Bancorp et al.*, Dkt. No. 21-cv-5672, Doc. No. 7 (E.D. Pa. Jan. 10, 2022), and remanded another as

## III.   Pending Motions

In the instant litigation, there are three pending motions to dismiss filed by the defendants. Mr. Belfi also filed a "motion in opposition to Defendants' motion to dismiss," which the Court construes as his opposition brief. Doc. No. 18.

In the first motion, most of the defendants (MERSCORP Holding Inc., Mortgage Registration Systems, Inc., Nationstar Mortgage LLC, and USAA Federal Savings Bank[6]) sought dismissal based on Mr. Belfi's purported failure to disclose the present claims in his bankruptcy filings. Doc. No. 10. Mr. Belfi then responded that he had amended his bankruptcy filings. Doc. No. 12, at 3.

After this response, two of the defendants filed separate motions to dismiss under Rule 12(b)(6) for failure to state a claim. These motions appear to assume that the prior motion is moot, although the defendants do not address their prior motion at all. The Court will treat the first motion to dismiss as moot based on the amended bankruptcy filings and focus on the two subsequent motions to dismiss as superseding motions. In their individual motions to dismiss, Wells Fargo asserts that Mr. Belfi fails to state a claim against it, Doc. No. 14, and USAA Federal Savings Bank asserts that each of Mr. Belfi's claims are barred by the statute of limitations and/or fail to state a legally sufficient claim, Doc. No. 17.

### LEGAL STANDARD

In evaluating motions to dismiss, the Court assumes that the allegations contained in the complaint are true. *Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983 (citing *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d, 884 891 (3d Cir. 1977)).

---

improperly removed from state court, *Brophy v. Belfi*, Dkt. No. 19-cv-1488, Doc. No. 5 (E.D. Pa. Apr. 9, 2019) (reversing case caption to reflect Mr. Belfi as the removing defendant rather than the plaintiff).
[6]  No proof of service has been filed for the other named defendant, JP Morgan Chase Bank, National Association.

In addition, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This includes state and federal judicial proceedings. *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

## I.      Rule 12(b)(1) Jurisdictional Challenge

A Rule 12(b)(1) motion challenges a federal court's authority to hear a claim for lack of subject matter jurisdiction. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The plaintiff "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). If the defendant does not raise any factual disputes in a Rule 12(b)(1) challenge to jurisdiction, the Court must accept the complaint's allegations as true and consider only the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000).

Federal courts are courts of limited subject matter jurisdiction, presumed to "lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). Because subject matter jurisdiction is not waivable, the Court can raise subject-matter jurisdiction concerns *sua sponte*. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

## II.     Rule 12(b)(6) Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court construes a *pro se* litigant's allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). But "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala*

*v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Lloyd v. Salameh*, 442 F. App'x 630, 631 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

"[E]ven if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted where the inadequacy of the complaint is apparent as a matter of law." *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015) (internal quotation marks omitted). If the Court dismisses a claim, "amendment must be permitted in [the *pro se*] context unless it would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## DISCUSSION

Mr. Belfi raises a variety of state and federal law claims. Federal courts typically begin with the federal claims before determining whether to exercise supplemental jurisdiction over the state law claims. Thus, the Court begins with Mr. Belfi's assorted federal claims.

## I.    Federal Claims

Mr. Belfi asserts claims based on four federal statutes: the Fair Debt Collections Practices Act (FDCPA), the Fair Credit Reporting Act (FCRA), the Racketeer and Corrupt Organizations Act (RICO), and the Lanham Act.

### A.  Fair Debt Collections Practices Act

First, Mr. Belfi asserts an FDCPA claim based on the defendants' alleged failure to send him an Act 6 notice[7] before filing the foreclosure complaint in state court. In his FDCPA claim,

---

[7] "Act 6 is the shorthand reference to the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. §§ 101-605, which relates to the foreclosure of residential mortgages. It requires, *inter alia*, that a holder give notice to the borrower of its intent to foreclose and specifies what information must be provided."

Mr. Belfi mentions only defendants USAA Federal Savings Bank, Nationstar Mortgage LLC, and Mortgage Electronic Registration System, Inc.  Am. Compl. ¶¶ 164, 167, 172.

### 1. Allegations Against Debt Collectors

USAA argues that Mr. Belfi fails to state an FDCPA claim for failure to state a claim because he alleges that USAA is a creditor, not a debt collector.  The FDCPA applies only to "debt collectors," 15 U.S.C. § 1692(e), which is defined as a person engaged "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due . . . another," 15 U.S.C. § 1692a(6).  "The term 'debt collector' . . . does not include . . . any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."  15 U.S.C. § 1692a(6)(A).  "The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed . . . ."  15 U.S.C. § 1692a(4).  Through this distinction between creditors and debt collectors, the FDCPA "exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions."  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019).  A mortgage is "a security interest in the property designed to protect the creditor's investment."  *Id.* at 1033.

Here, the amended complaint raises no factual allegations to enable the Court to find that any of the defendants are debt collectors within the meaning of the FDCPA—rather, Mr. Belfi alleges that they are creditors.  Mr. Belfi alleges that "Nationstar Mortgage, LLC d/b/a Mr. Cooper as Servicer for USAA Federal Savings Bank" is the "creditor to whom [his] debt is owed."  Am. Compl. ¶ 167.  The only debt that Mr. Belfi discusses is his mortgage.  *Id.* ¶ 1.  He alternately alleges that Nationstar Mortgage LLC is the servicer and that Mortgage Electronic Registration System, Inc. is the servicer.  *Id.* ¶¶ 52, 171, 172.

---

*Polao v. Deutsche Bank Nat'l Tr. Co., as Tr. for Holders of GSR Mortg. Loan Tr. 2007-0A1*, 242 A.3d 411 (Table), 2020 WL 6690627, at *5 n.6 (Pa. Super. Ct. 2020).

However, Mr. Belfi also asserts that his loan default on July 1, 2018 predated the assignment of his loan from USAA to Mortgage Electronic Registration System, Inc. on November 9, 2018.  Am. Compl. ¶ 172.  Relying on case law in which courts found that mortgage loan servicers who acquired debt before default were *not* debt collectors under the FDCPA, Mr. Belfi appears to argue that assignment after default renders Mortgage Electronic Registration System, Inc. a debt collector.  *Id.* n.36.  But the Supreme Court overturned the so-called default test in 2017.  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) ("[W]hile the [FDCPA] surely *excludes* from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must *include* anyone who regularly collects debts acquired after default.") (emphasis added).  Although, before *Henson*, the Third Circuit Court of Appeals held that "an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned," *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), the Court of Appeals has since recognized that *Henson* "repealed the 'default' test [the Third Circuit Court of Appeals] followed," *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 367 (3d Cir. 2018).

Rather than applying the "default" test, the Court must assess whether Mr. Belfi has sufficiently alleged that the defendant engages "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due . . . another," 15 U.S.C. § 1692a(6); *Henson*, 137 S. Ct. at 1721.  Although he argues in opposition to USAA's motion to dismiss that USAA "appears to be the debt collector," his complaint alleges no facts to support such a legal conclusion. Doc. No. 18, at 15.  Mr. Belfi does not allege any facts to find that any defendant meets the definition of a debt collector under the FDCPA. *See Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 468 (D.N.J. 2019).

Thus, the amended complaint fails to state a FDCPA claim against a debt collector.

2. *Statute of Limitations*

Additionally, USAA argues that even if Mr. Belfi did assert a viable claim against a debt collector, the statute of limitations would bar his claims. The FDCPA establishes a statute of limitations of "one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened," "not the date a potential plaintiff discovers or should have discovered the violation." *Rotkiske v. Klemm*, 140 S. Ct. 355, 359 (2019).

As the basis for his FDCPA claim, Mr. Belfi asserts that "[t]he defendants failed to send [him] an Act 6 – Notice of Intent . . . before filing their complaint on January 10th, 2019." Am. Compl. ¶ 162. He did not file this lawsuit until May 2022. Thus, Mr. Belfi's complaint is not timely under the one-year statute of limitations.

Mr. Belfi does not dispute that his lawsuit is untimely, but he seeks the Court's indulgence and asks the Court to apply the doctrine of equitable tolling. Doc. No. 18, at 16. "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (internal quotation marks omitted). "Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

To support his equitable tolling request, Mr. Belfi asserts that he "has pursued every avenue" in state court and suffered from a mental illness that led to his hospitalization without internet access from December 30, 2020 to June 15, 2021. Doc. No. 18, at 10–11, 13. However, this hospitalization period began nearly a year after the January 10, 2020 expiration of the statute

of limitations. And by Mr. Belfi's own admission, he has filed and participated in other lawsuits

between this period and the instant litigation (*e.g.*, Compl. *Belfi v. Raidus Bancorp et al.*, Dkt. No.

21-cv-5672, Doc. No. 1 (E.D. Pa. Dec. 27, 2021)). Therefore, the Court will not provide the

"extraordinary relief" of equitable tolling. *Singleton v. DA Philadelphia*, 411 F. App'x 470, 473

(3d Cir. 2011). Mr. Belfi's FDCPA claim is barred because it is untimely.

B. Fair Credit Reporting Act

Mr. Belfi also raises a few scattered allegations for his FCRA claim. He asserts that he

filed a consumer complaint with the Consumer Financial Protection Bureau in August 2019 based

on an Experian report that his loan was delinquent. Am. Compl. ¶ 159. But Mr. Belfi does not

assert that this report was untrue (*e.g.*, that the loan was not delinquent). Separately, he seems to

argue that the assignment of his mortgage affected his credit score because the length of time his

accounts had been open was too short when he applied for an unrelated loan. *Id.* ¶¶ 150, 159.

*1. Failure to State a Claim*

Wells Fargo moves to dismiss Mr. Belfi's FCRA claim for failure to state a claim.[8] Doc.

No. 14-1, at 12–13. Mr. Belfi does not allege that any of the defendants are credit reporting

agencies or furnishers of information to such agencies, but he does reference the standards

applicable to a furnisher of information to a credit reporting agency.[9] Am. Compl. ¶ 157. To state

a FCRA claim against a furnisher of information, a plaintiff must allege that "he filed a notice of

dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher

---

[8] Wells Fargo introduces evidence outside the pleadings, which the Court disregards rather than converting Wells Fargo's motion into one for summary judgment. Fed. R. Civ. P. 12(d).

[9] A party who provides information to a credit reporting agency is a furnisher of information under the Fair Credit Reporting Act. 15 U.S. Code § 1681s-2(a)(1)(A); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).

of information of the dispute; and the furnisher of the information failed to investigate and modify the inaccurate information." *Pressley v. Capital One*, 415 F. Supp. 3d 509, 513 (E.D. Pa. 2019).

Mr. Belfi alleges that he filed disputes with "all three of the credit reporting agencies" about his "new USAA/Nationstar account opened in September 2016," and that USAA responded "acknowledging they received an inquiry from Equifax." Am. Compl. ¶¶ 152, 153, 154. Mr. Belfi then argues that "FCRA makes it unlawful for a furnisher of information to a consumer reporting agency, upon receiving notice of a Consumer dispute from the consumer reporting agency, not to conduct a reasonable investigation of the disputed information." Am. Compl. ¶ 157.[10] However, Mr. Belfi does not allege that any of the defendants failed to conduct a reasonable investigation. Therefore, Mr. Belfi's amended complaint fails to allege sufficient facts to meet the third portion of a FCRA claim against a furnisher of information. *Pressley*, 415 F. Supp. 3d at 513.

### 2. *Statute of Limitations*

USAA also argues that Mr. Belfi's FCRA claim is barred by the statute of limitations. The FCRA statute of limitations is the "*earlier* of 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p (emphasis added). Here, Mr. Belfi was aware of the basis for his FCRA claim by at least his August 2019 CFPB complaint, which would result in the statute of limitations expiring no later than August 2021. Again, his May 2022 complaint is untimely.

---

[10] Reading between the lines of Mr. Belfi's amended complaint, he appears to take issue with the reporting of his mortgage monthly payments as $2,225 after the assignment of his mortgage rather than the prior "accurately reported" amount of $1,986. Am. Compl. ¶¶ 151–52. But elsewhere in his Amended Complaint, he asserts that his monthly payments were $1,768.38 and the "total sum, including Homeowners insurance" was $2,186. Am. Compl. ¶ 5.

Mr. Belfi acknowledges his claim is not timely and again requests equitable tolling, without providing a basis specific to the timing of the FCRA statute of limitations. Doc. No. 18, at 14. The Court declines to provide this relief for the same reasons discussed above. Therefore, Mr. Belfi's FCRA claim is also barred by the statute of limitations.

C.   Racketeer and Corrupt Organizations Act

For his RICO claim, Mr. Belfi also raises scattershot allegations without a clear connection.[11] The Court divines four distinct sets of allegations. First, Mr. Belfi asserts that, because the VA Loan Guaranty program reimburses lenders for defaults on veteran mortgages, his lenders should not be able to also recover from him in foreclosure. Am. Compl. ¶ 174. He frames his foreclosure action as a scheme that "de-frauded the U.S. Government and . . . subject[ed] [Mr.] Belfi to 'double jeopardy' [because] each of those M[ortgage] B[acked] S[ecurities] investors and Ginnie Mae can claim interest." *Id.* ¶ 70. Second, he takes issue with the MERS system as a "sham" that enables "the [unnamed] defendant's secondary market securities scheme." *Id.* ¶¶ 92–93. Similar to his VA Loan Guaranty claim, he asserts that "Nationstar and/or USAA" cannot foreclose on the Property because they already received payment for it when it was "securitized" as a mortgage-backed security." *Id.* ¶ 68. Third, he alleges that Wells Fargo was the previous lender for his property and charged Mr. Belfi "unallowable" and "hidden" fees when he refinanced an unspecified debt (presumably the mortgage). *Id.* ¶ 185. Fourth, he accuses Nationstar Mortgage LLC, Mr. Basped, Colleen Barnett (a notary public), and Tracy Armstrong (a DocX employee[12]) of "conspiring to commit perjury in the manufacture of a document purporting to assign only the Mortgage to USAA, using false and misrepresentative information contained within the document,

---

[11] Mr. Belfi did not file a RICO Case Statement as typically required. *See Tierney & Partners, Inc. v. Rockman,* 274 F. Supp. 2d 693, 699 (E.D. Pa. 2003).

[12] Ms. Barnett, Ms. Armstrong, and DocX are not named as defendants.

knowing said information was false, in violation of the RICO statutes, Mail and Wire Fraud." *Id.*

¶ 190. He alleges that Mr. Basped (who is allegedly not a real person) and the notary public "robo-

signed" fraudulent documents and that all defendants "manipulat[ed] homeowners and

maintain[ed] fraud on the court." *Id.* ¶¶ 118, 184–85.

### 1. Standing

Wells Fargo seeks to dismiss Mr. Belfi's RICO claim because Mr. Belfi lacks standing to

assert RICO claims based on actions that did not injure him.  Mr. Belfi responds that "Defendants'

RICO conduct stems from the inception of the MERS® eRegistry, their participation as Members

of Merscorp Holdings, Inc., the 2008 mortgage crisis, and the thousands, if not millions, of

fraudulent 'MERS' documents littering the real property records around the country, fraudulent

foreclosures, etc." Doc. No. 18, at 22.

A RICO "plaintiff only has standing if, and can only recover to the extent that, he has been

injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v.*

*Imrex Co.*, 473 U.S. 479, 496 (1985).  Mr. Belfi lacks standing to bring a civil RICO claim based

on action that allegedly defrauds the Government or this Court because that is not an injury to him

as an individual. *Id.*  And to the extent Mr. Belfi bases his claims on an assignment of his mortgage,

this does not constitute an injury under RICO because he does not allege personal financial harm

resulting from the defendants' actions. *Aliperio v. Bank of Am., N.A.*, 764 F. App'x 236, 239 (3d

Cir. 2019).[13]  Although he alleges that his credit score declined because of the assignment, "[t]he

loss of creditworthiness, without more, is simply not enough to confer RICO standing." *Macauley*

---

[13]  More broadly, Mr. Belfi lacks Article III standing to assert claims based on the assignment of his
mortgage. *See Washington v. Specialized Loan Servicing LLC*, 778 F. App'x 183, 186 (3d Cir. 2019)
("[Mr.] Washington acknowledges that he took out a loan that he has not repaid, and he does not allege that
he has paid more than required or that he has been subject to requests for payment from different entities.
Thus, . . . [Mr.] Washington has failed to allege that the assignment caused him a sufficient injury to
establish standing.").

*v. Est. of Nicholas*, 7 F. Supp. 3d 468, 480 (E.D. Pa. 2014). Therefore, Mr. Belfi lacks standing for his RICO claim.

    *2. Predicate Acts*

        Additionally, RICO claims require a predicate act of racketeering. *Sedima*, 473 U.S. at 495. "Mail fraud and wire fraud are forms of 'racketeering activity' for purposes of RICO." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454 (2006). "Mail or wire fraud consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). "When fraud is the predicate act, the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) applies." *Id.* Rule 9(b) requires pleading with particularity the "who, what, when and where details of the alleged fraud." *Id.*

        Mr. Belfi asserts that if he had known "the real parties in interest," he would have "decide[d] NOT to engage in the mortgage loan transaction, which both directly and indirectly aided in the production and recording of the said Assignments for the purposes of committing … mail fraud . . . [and] wire fraud through the recording by presentment of the fraudulent Assignment used in this process." Am. Compl. ¶ 191. Mr. Belfi claims his mortgage was fraudulently assigned to USAA by Mr. Basped on November 15, 2018. *Id.* ¶¶ 120, 137–38. Specifically, Mr. Belfi alleges that Mr. Basped "improperly record[ed] a false legal description" that included a slightly different distance for a property line measurement. Am. Compl. ¶ 136–38.

        Mr. Belfi does not provide sufficient detail to establish the "who, what, when and where details of the alleged fraud." *Bonavitacola*, 87 F. App'x at 231. For most of his RICO allegations,

Mr. Belfi does not point to any particular wire or mail transmissions.[14]   As to the "false legal description" in which Mr. Basped (who is allegedly not a real person) included the wrong distance for a property line measurement, Mr. Belfi does not allege any factual matter to tie this purported boundary discrepancy to a scheme to defraud. *Id.*   Therefore, Mr. Belfi also fails to allege mail or wire fraud as a predicate act for his RICO claim.

   D. <u>Lanham Act</u>

   Lastly, Mr. Belfi includes an elaborate one-sentence allegation that references the Lanham Act:

> The misrepresentations involving Mortgage Electronic Registration Systems and MERSCORP Holding Inc.['s] participation in the scheme as an "Electronic Agent," when such participation might have discouraged consumers from choosing to purchase (or engage in the loan transaction) a home using a "MERS"-originated Mortgage, was fraudulently concealed from said consumers, in apparent violation of the Lanham Trademark Act (15 U.S.C.A. Section 1501 et seq) is supposed to build consumer confidence to enter into a transaction without fear of serious legal repercussions.

Am. Compl. ¶ 143.

   Neither defendant addresses this relatively hidden claim, but the Court will consider *sua sponte* whether it states a viable claim. *Zaslow*, 103 F. Supp. 3d at 664.

   To state a claim for trademark infringement or unfair competition under the Lanham Act, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).   Consumers do not have standing to allege a Lanham Act violation; rather, "a plaintiff must

---

[14] Although Mr. Belfi elsewhere mentions his lender's required use of first-class mail for mortgage notices, Am. Compl. ¶145, the mere "mailing of monthly mortgage statements and several notices of intention to foreclose d[oes] not constitute mail fraud." *Aliperio*, 764 F. App'x at 239.

allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).

Here, Mr. Belfi does not allege that he holds the trademark for "MERS" or allege an injury to a commercial interest in reputation or sales. Therefore, he does not have standing under the Lanham Act to raise claims based on use of the MERS trademark.

For the foregoing reasons, the Court dismisses Mr. Belfi's four federal claims. The Court must also consider whether this dismissal should be with or without prejudice. Courts should grant leave to file an amended complaint "unless it would be inequitable or futile." *Grayson*, 293 F.3d at 108. Mr. Belfi has not sought leave to amend his complaint. He has also already amended his complaint once. The Court has dismissed each of his federal claims for either failure to meet the statute of limitations or lack of standing, neither of which could be cured through further amendment. Therefore, the Court finds that a dismissal without prejudice would be futile and the Court dismisses Mr. Belfi's federal claims with prejudice.

## II.    State Law Claims

Mr. Belfi also asserts a host of state law claims. But this Court would only obtain jurisdiction over the state law claims through exercise of supplemental jurisdiction. 28 U.S.C. § 1367. Because the Court dismisses Mr. Belfi's federal claims, it declines to exercise supplemental jurisdiction over the state law claims. However, in order to determine whether to dismiss the state claims with or without prejudice, the Court will briefly consider two jurisdictional issues specific to the state law claims.

### A. Prior Exclusive Jurisdiction

Based on his state law claims, Mr. Belfi asks this Court to declare "that he is the exclusive titleholder to his residential real property." Am. Compl. at 125. But there is already a foreclosure

action for the Property pending in the Philadelphia Court of Common Pleas. *See* Doc. No. 17-2. Because a state court already has jurisdiction over the claims to the Property, the prior exclusive jurisdiction doctrine precludes this Court from exercising jurisdiction over the same property.

As a general rule, "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). The prior exclusive jurisdiction doctrine (also called the *Princess Lida* doctrine) "is a 'mechanical rule' that 'applies when: (1) the litigation in both the first and second fora are in rem or quasi in rem in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dyno v. Dyno*, No. 20-cv-3302, 2021 WL 3508252, at *2 (3d Cir. Aug. 10, 2021) (quoting *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993)). This rule is "designed to prevent two courts from asserting overlapping and potentially conflicting authority over a single piece of property." *Barbiero v. Kaufman*, No. 12-cv-6869, 2013 WL 3939526, at *6 (E.D. Pa. July 30, 2013), *aff'd*, 580 F. App'x 107 (3d Cir. 2014).

This action involves the same property as the foreclosure proceedings in the Philadelphia Court of Common Pleas. The first litigation—the foreclosure action—is an *in rem* proceeding. *Green Tree Consumer Disc. Co. v. Newton*, 909 A.2d 811, 815 (Pa. Super. Ct. 2006). Pennsylvania courts also view the second, current litigation—an action to quiet title—as an *in rem* or *quasi in rem* action because "Pennsylvania views such actions as uniquely tied to the property." *Peet v. Bd. of Supervisors of New Hanover Twp.*, No. 21-cv-2696, 2021 WL 5040358, at *4 (E.D. Pa. Oct. 29, 2021); *see also In re Kovalchick*, No. 06-cv-1066, 2006 WL 2707428, at *2 (M.D. Pa. Sept. 19, 2006) ("A quiet title action in Pennsylvania therefore requires that the court determine who owns the property, and under what terms.").

Mr. Belfi asks this Court provide "a declaration that he is the exclusive titleholder to his residential real property." Am. Compl. ¶ 125. So the relief sought by Mr. Belfi for his state law claims requires this Court, as the second court, to exercise control over property already under the control of the Philadelphia Court of Common Pleas. Therefore, the prior exclusive jurisdiction doctrine precludes this Court from exercising jurisdiction. Where the prior exclusive jurisdiction doctrine applies, the court must dismiss the second-filed case. *Barbiero v. Kaufman*, 580 F. App'x 107, 111 (3d Cir. 2014).

## B. Predominance of State Law Issues

The Court also notes that, even if the prior exclusive doctrine did not apply to certain of the state law claims, the Court would still decline to exercise pendent jurisdiction over any remaining state law claims. "[D]istrict courts may decline to exercise supplemental jurisdiction [if] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C.A. § 1367(c)(2). "Generally, a district court will find substantial predomination 'where a state claim constitutes the real body of a case, to which the federal claim is only an appendage–only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995)).

Mr. Belfi's amended complaint is first and foremost an attempt to regain control of the Property. *See* Am. Compl. at 63. Because this form of relief is based on his state law claims, Mr. Belfi's state law claims substantially predominate over any federal statutory claims over which this Court could have federal question jurisdiction.

If a court lacks subject matter jurisdiction, it lacks authority to dismiss a case with prejudice. *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 156 (3d Cir. 1997). Thus, the dismissal of Mr. Belfi's state law claims will be without prejudice.

## III.   Motion to Appoint Counsel

Mr. Belfi also asks the Court to appoint counsel to represent him. Litigants in civil actions do not have a constitutional or statutory right to appointed counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Although the Court has discretionary authority to request an attorney to represent a civil litigant unable to afford counsel, *see* 28 U.S.C. § 1915(e)(1), the Court should only do so if "the plaintiff's claim has arguable merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). For the reasons discussed above, Mr. Belfi's claims lack arguable merit. Therefore, the Court will deny the motion to appoint counsel.

## CONCLUSION

For the foregoing reasons, the Court dismisses Mr. Belfi's federal claims with prejudice and state claims without prejudice, and denies his motion to appoint counsel. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE